## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL-RAY THOMAS,** | **2:18-CV-13829-TGB** |
| Petitioner, | |
| vs. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |
| **GARY MINIARD,** | |
| Respondent. | |

Michael Ray Thomas is in the custody of the Michigan Department of Corrections pursuant to convictions for possession of child sexually abusive material, Mich. Comp. Laws § 750.145c(4), using a computer to commit possession of child sexually abusive material, Mich. Comp. Laws § 752.796, and unlawful use of the Internet to solicit child sexually abusive activity, Mich. Comp. Laws § 750.145d. He has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

---

[1] Thomas filed the petition *pro se*. The Court later appointed counsel to represent him. (*See* ECF No. 17.)

Thomas raises four grounds for relief: (i) the trial court improperly allowed admission of other acts evidence; (ii) insufficient evidence supported his convictions; (iii) the prosecutor engaged in multiple instances of misconduct; and (iv) defense counsel was ineffective. For the reasons discussed the Court denies the petition and denies a certificate of appealability.

## I.    Background

The charges against Thomas arose from the discovery of child sexually abusive material on his computers in 2012. The Michigan Court of Appeals summarized the testimony leading to Thomas's convictions as follows:

> The police became involved with Thomas after Paul McNeil reported being involved in an Internet exchange in September 2012, in which he was contacted by an individual who inquired about sexual activity with children. The person sent McNeil an email containing three photos of children, one of which showed sexual activity between a young female and a male. The person asked McNeil to send him nude photographs of McNeil's children. McNeil instead contacted the police. Using McNeil's email account, the police were able to obtain the IP address for the source of the sender's emails, which was traced to Thomas. The police then obtained search warrants for Google and Comcast accounts and Thomas's home, which he shared with his girlfriend, Karen Cipriano, and her young son.
>
> The police seized a number of computers and other electronic storage devices from Thomas's home. A forensic computer expert examined the computers and equipment. She was able to recover parts of the conversations with McNeil on two of the computers, along with 115 images of child pornography.

The computers also contained search terms typically used by persons looking for child pornography on the Internet, programs used to anonymously share such files, and web histories of such searches.

In addition, the prosecution presented evidence of a prior email exchange, from late 2011 to early 2012, between Detective Marcus Penwell, a police officer in Ohio who investigated child pornography cases and another person who used the email address GoodTimes.Jones@gmail.com, which was the same email address used in the communications with McNeil.  The person sent Penwell several images of young children, including some showing children engaged in sexual activity, and the person sought similar images of child sexual activity from Penwell.

Thomas did not dispute that child sexually abusive material was found on his computers.  However, he denied knowledge of the images and denied that he was the person who communicated with McNeil.  Thomas argued that anyone near his home would have been able to access his wireless network and plant the images on his computers using remote access software.  The defense theory was that the images and the emails to McNeil were planted by Alexander Waschull, Cipriano's former boyfriend and the father of Cipriano's child.  Thomas presented evidence that Waschull and Cipriano were involved in an ongoing custody dispute, that Waschull was upset that his child was spending time with Thomas, and that Waschull had become obsessed about Thomas's case and written articles and acquired numerous documents about it.

*People v. Thomas*, No. 329750, 2017 WL 1967475, at *1 (Mich. Ct. App. May 11, 2017).

Following a jury trial in Macomb County Circuit Court, Thomas was convicted of possession of child sexually abusive material, using a

3

computer to commit possession of child sexually abusive material, and unlawful use of the Internet to solicit child sexually abusive activity.  On September 29, 2015, he was sentenced to concurrent terms of one to four years for possession of child sexually abusive material, one to seven years for unlawful use of a computer, and twelve to twenty years for unlawful use of the Internet.  *Id.*

Thomas filed an appeal of right in the Michigan Court of Appeals raising these claims: (i) other act evidence improperly admitted; (ii) prosecutor committed misconduct during closing argument; (iii) verdict against the great weight of the evidence; (iv) *Brady* violation; (v) ineffective assistance of trial counsel; and (vi) prosecutor committed misconduct throughout trial.  The Michigan Court of Appeals affirmed Thomas's convictions.  *Id.*  He filed an application for leave to appeal in the Michigan Supreme Court raising these claims: (i) *Brady* violation; (ii) prosecutorial misconduct; (iii) ineffective assistance of counsel; (iv) verdict against the great weight of the evidence; (v) improper bind over; (vi) improper application of Mich. Comp. Laws § 750.145d(2)(f) to secure conviction; and (vii) jury instruction failed to set forth the solicitation element of soliciting another person to commit crime. The Michigan Supreme Court denied leave to appeal.  *People v. Thomas*, 907 N.W.2d 565 (Mich. March 5, 2018).

Thomas then filed a motion for habeas corpus relief raising eight claims.  The Court dismissed the petition without prejudice because four

4

claims were unexhausted. *Thomas v. Winn*, No. 18-11253, 2018 WL 2299080, at *3 (E.D. Mich. May 21, 2018). Thomas filed another habeas petition in the Western District, which transferred the petition to this Court. (*See* ECF No. 2.)  That petition—the instant petition—abandons the unexhausted claims, retaining only the first four claims from the original petition, (ECF No.1):

    i.    Improper use of 404b evidence.
    ii.   Insufficiency of the evidence.
   iii.   Prosecutorial misconduct.
   iv.   Ineffective assistance of counsel.

Respondent has filed an answer to the petition maintaining that Thomas's first and third claims are procedurally defaulted and that all of his claims are meritless.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

## II.   Standard of Review

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court must defer to the Michigan Court of Appeals' plain-error analysis of Thomas's claims. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017). The AEDPA imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

6

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). This presumption is rebutted only with clear and convincing evidence. *Id.* Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.   Discussion

### A. Claim One: Admission of Other Acts Evidence

In his first claim, Thomas challenges the admission of evidence concerning Detective Penwell's email exchange with a person using the email address "GoodTimes.Jones@gmail.com," who inquired about child pornography, and sent images of children engaged in sexual activity.  He argues that the admission of these emails violated Mich. R. Evid. 404(b) and was unfairly prejudicial.

The Michigan Court of Appeals held that the evidence was relevant to a proper, noncharacter purpose under Rule 404(b) and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.  The state court explained:

> In this case, the defense did not dispute that child sexually abusive material was found on Thomas's computers. However, Thomas denied any knowledge of the material, and he also denied being the person who communicated with McNeil for the purpose of soliciting child sexually abusive activity.  Therefore, the principal issue in the case was the identity of the person who communicated with McNeil and sent him images of child pornography.  The evidence that Penwell communicated with a person who transmitted images of child sexually abusive material and who used the same email address as the person who communicated with McNeil, from an IP address that was also linked to Thomas, made it more probable that it was Thomas who used the email address GoodTimes.Jones @gmail.com to communicate with McNeil.
>
> The fact that Penwell could not say with certainty that Thomas was the person he was communicating with through the  GoodTimes.Jones@gmail.com  email  address  did  not

preclude admission of the evidence.  MRE 404(b)(1) is a rule of inclusion … and it provides that other acts evidence may be admissible to prove identity, MRE 404(b)(1). Here, Penwell's contact with the person using GoodTimes.Jones @gmail.com—an email address traced to Thomas's home and the same email address used in the communications with McNeil—was circumstantial evidence that it was Thomas who used that email address, particularly where the person made other comments during the chat that were consistent with Thomas's home business.  Therefore, the evidence was relevant for a proper, noncharacter purpose under MRE 404(b)(1).

Further, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Thomas maintained that while the email address GoodTimes.Jones@gmail.com was traced back to his home and Internet provider, it was possible that anyone with access to his Wi–Fi network could have placed the images on his computers and communicated with McNeil with that email address.  Thomas accused Waschull of planting the pornographic images and using his Internet service to communicate with McNeil, ostensibly because Waschull did not like that his child was spending time with Thomas and to provide Waschull with leverage in his ongoing custody dispute with Cipriano by showing that Cipriano was involved in a relationship with an unsavory person.  However, Penwell's testimony indicated that his contacts with the person who used the GoodTimes.Jones@gmail.com email address occurred in late 2011 or early 2012, which was before Thomas and Waschull knew each other.  The fact that the communications with Penwell predated the timeframe in which Waschull would have developed a motive to frame Thomas significantly increased the probative value of the prior acts evidence.  Moreover, while the evidence was prejudicial, it was not unfairly prejudicial.  Penwell's testimony … allowed the jury to weigh whether the similar contacts with Penwell and McNeil, from the same email

address, was simply a coincidence or whether Thomas was engaged in a similar pattern of conduct with both persons. Finally, the trial court instructed the jury on the limited, permissible purpose for which the evidence could be considered, thereby reducing the potential for unfair prejudice.

*Thomas*, 2017 WL 1967475 at *2-3.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. First, Thomas's claim that admission of the testimony violated state law is not cognizable on federal habeas review. *Shoemaker v. Jones*, 600 Fed. App'x 979, 984 (6th Cir. 2015). A federal court may grant an application for writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, and not for perceived errors of state law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Second, to the extent that Thomas alleges admission of this evidence violated his right to due process, this claim is meritless. The admission of evidence may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the admission "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (2003). The Supreme Court "defined the category of infractions that

10

violate fundamental fairness very narrowly." *Estelle*, 502 U.S. at 73 (1991). To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted). This standard accords the state courts "wide latitude ... with regard to evidentiary matters under the Due Process Clause." *Id.*

For the reasons discussed by the Michigan Court of Appeals, the challenged evidence was relevant and probative. It directly addressed Thomas's claim that Waschull intentionally planted these photographs as a means to retaliate against Thomas and to influence the custody dispute. The challenged testimony tended to show that someone utilized the "goodtimes" email address to solicit sexually abusive photographs before Thomas was known to Waschull. The "other acts" evidence, while prejudicial, was not unfairly so.

The Court concludes that it was not fundamentally unfair to admit evidence of the prior email communication. Therefore, Thomas's right to due process was not violated by admitting the evidence, and he has no right to habeas relief on his claim.

## B. Claim Two: Sufficiency of the Evidence

In his second claim, Thomas claims that insufficient evidence supports his convictions because there was no evidence showing that he knew that the child sexually abusive material was on his computers or

11

that he was the person responsible for downloading it. He also claims that there was no evidence to show that he was the person who sent emails to Paul McNeil containing nude photos of children and soliciting nude photographs of children from McNeil.

On habeas review, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict, and a second to the Michigan Court of Appeals' decision. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia,* 443 U.S. 307, 319) (1979) (emphasis in *Jackson*). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Mich. Comp. Laws § 750.145c(4), a person is guilty of a felony if the person "knowingly possesses . . . child sexually abusive material." Mich. Comp. Laws § 752.796(1) provides: "A person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime." Finally, to prove a defendant guilty of unlawful use

of the Internet to solicit child sexually abusive activity, the prosecution must prove: (1) use of the Internet or a computer, (2) intent to commit solicitation of child sexually abusive activity, and (3) the intended victim is a minor or believed to be a minor.  Mich. Comp. Laws § 750.145d.

The Michigan Court of Appeals, applying the standard of review set forth in *Jackson*, denied Petitioner's sufficiency-of-the-evidence claim. The Michigan Court of Appeals held that the direct and circumstantial evidence, considered together, supported the verdict:

> Although Thomas presented evidence in support of his theory that Waschull had a motive to frame Thomas, the prosecution presented circumstantial evidence pointing to Thomas as the only person who had access to all of the computers and storage devices on which the child sexually abusive images were found.  A forensic examination of Thomas's devices showed that the email address used to communicate with McNeil was used on Thomas's computers before Waschull even knew Thomas, and before Cipriano moved in with Thomas.  In addition, the images of child pornography were found on multiple computers and storage devices in Thomas's home, and those devices also contained evidence of search terms typically used by persons looking for child pornography on the Internet, programs used to anonymously share such files, and web histories of such searches.  That circumstantial evidence was strong proof that Thomas used those devices to download and search for child sexually abusive material on the Internet and solicited the offense of child sexually abusive activity in the contacts with McNeil.  Furthermore, the communications with Penwell, which were made using the same email address as the communications with McNeil, and which similarly involved inquiries about sexual activity with children, occurred before Waschull knew Thomas, thereby undercutting Thomas's theory that Waschull planted that

evidence.  The prosecution also presented expert testimony that the computers on which child sexually abusive material was found did not contain software or malware that would allow a person to access the computers remotely.  While the defense made a concerted effort to show that it was possible that someone else planted the evidence on defendant's computers, in light of the body of evidence refuting that theory and pointing to Thomas as the person responsible for committing the charged offenses, the jury's verdicts are not so manifestly against the great weight of the evidence that it would be a miscarriage of justice to allow the verdicts to stand.

Thomas appears to also argue that the evidence was insufficient to support his convictions because of the lack of evidence that he was the person who committed the charged offenses. "[I]dentity is an element of every offense." *People v. Yost*, 278 Mich. App. 341, 356; 749 N.W.2d 753 (2008).  The above evidence, viewed in the light most favorable to the prosecution, supports an inference that Thomas was the only person who had access to all of the computers and storage devices on which the child sexually abusive images were found, and it identifies him as the person who solicited the child sexually abusive activity in the email communications with McNeil.  Accordingly, there is sufficient evidence to establish that Thomas was the individual who committed the charged crimes.

*People v. Thomas*, No. 329750, 2017 WL 1967475, at *6 (Mich. Ct. App. May 11, 2017).

Thomas's argument essentially asks the Court to reweigh the evidence and to come to a different conclusion than that reached by the jury.  This is not the Court's role on habeas review.  The Court does not "rely simply upon [its] own personal conceptions of what evidentiary

showings would be sufficient to convince [the Court] of the petitioner's guilt." *Brown*, 567 F.3d at 205.   Instead, the Court asks whether the Michigan Court of Appeals "was unreasonable in *its* conclusion that a rational trier of fact could find [Petitioner] guilty beyond a reasonable doubt based upon the evidence presented at trial." *Id.* (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)) (emphasis in *Brown*).   Further, "circumstantial evidence may support a conviction, and such evidence need not remove every reasonable hypothesis except that of guilt." *Hill v. Mitchell*, 842 F.3d 910, 934 (6th Cir. 2016) (internal quotation omitted). *See also Gipson v. Sheldon*, 659 Fed. App'x 871, 881 (6th Cir. 2016) ("[C]ircumstantial evidence ... is intrinsically no different from testimonial evidence and that is sufficient as long as the jury is convinced beyond a reasonable doubt.") (internal quotation omitted).

"A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326).   The evidence against Thomas was sufficient for a reasonable trier of fact to find the essential elements of Thomas's crimes proven beyond a reasonable doubt.   It was not unreasonable for the state court to conclude that, weighing all reasonable inferences in the State's favor,

there was legally sufficient evidence presented to support the convictions. Accordingly, habeas relief is denied on this claim.

## C. Claim Three: Prosecutorial Misconduct

Next, Thomas argues that his right to due process was violated by the prosecutor's misconduct.  Specifically, Thomas argues that the prosecutor denigrated him and defense counsel; allowed perjured testimony from Waschull; interjected personal opinions and knowledge about the case when questioning witnesses; failed to preserve exculpatory evidence; and improperly shifted the burden of proof to the defense.

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned."  *Id.* (internal quotation omitted).  To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair."  *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).  The "first question" is whether the prosecutor's comments were improper.  *Stermer v. Warren*, 959 F.3d 704, 725 (6th Cir. 2020).

### a. Closing Argument and Cross-Examination

First, Thomas argues that the prosecutor improperly denigrated him and defense counsel during closing argument by asserting that Thomas's defense theory claiming Waschull framed him was a "smoke screen" designed to deflect the jury's attention away from the evidence. *Thomas*, 2017 WL 1967475 at *3. The prosecutor followed this comment with a review of the evidence and an explanation as to why the evidence did not support the defense theory. The Michigan Court of Appeals held that it was "not improper for the prosecutor to . . . argue that the defense theory was not credible in light of the facts and evidence." *Id.* at *4.

A prosecutor may not make personal attacks on a defendant or defense counsel but may highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory. *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). A prosecutor's description of defense counsel's argument as a smoke screen is not *per se* improper. *See Key v. Rapelje*, 634 Fed. App'x 141, 149 (6th Cir. 2015) (prosecutor's "smoke screen" argument was prosecutor's fair characterization of defendant's evidence that did not render defendant's trial unfair).

Because the prosecutor's comment was not an attack on the defense, but rather a comment on the strength of the defense, the Court finds that Michigan Court of Appeals' decision is not contrary to, nor an unreasonable application of, federal law or the facts.

17

Thomas challenges the prosecutor's opening and closing statements and the manner in which he questioned and cross-examined witnesses. For example, he claims that counsel's cross-examination of Thomas regarding videotape evidence submitted by the defense was improper because he implied that Thomas was lying and had tampered with the evidence. The record supports the Michigan Court of Appeals' conclusion that "Thomas was subjected to appropriate cross-examination intended to challenge the competency of the evidence produced." *Thomas*, 2017 WL 1967475, at *5. Thomas's claims with respect to the prosecutor's cross-examination of additional witnesses is similarly meritless. A prosecutor is free to question a witness's recollection, potential bias, and motive for testifying. The transcript does not support Thomas's claim that the prosecutor's questioning or arguments veered outside the range of acceptable conduct.

### b. Alleged Presentation of False Testimony

Next, Thomas argues that the prosecutor committed misconduct when he knowingly presented false testimony from witness Alexander Waschull. Thomas maintains that Waschull had contact with the prosecutor's office prior to Thomas's arrest and that his trial testimony to the contrary was perjured. The Michigan Court of Appeals recognized that a prosecutor's knowing presentation of material, false testimony could violate due process but found no violation because Thomas did not

establish that Waschull's testimony was false.   *Thomas*, 2017 WL 1967475 at *5.  The state court reasoned:

> Thomas cites several pages of trial transcript and argues that Waschull's denial is refuted by testimony demonstrating his explicit knowledge of details about Thomas's case. However, the fact that Waschull had knowledge about various details of the case does not establish that he acquired that knowledge from the prosecutor's office. In addition, because the cited testimony was presented to the jury, the jury was able to decide for itself whether it affected the credibility of Waschull's denial. Thomas refers to two other documents that he contends support his claim that Waschull's trial testimony was false. We have reviewed those documents and neither one supports Thomas's contention that Waschull presented false testimony.

*Thomas*, 2017 WL 1967475, at *5.

Prosecutors may not deliberately present evidence that they know is false.  Indeed, the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice."  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations and internal quotations omitted).

Thomas has not shown that the Michigan Court of Appeals' holding that the prosecutor did not knowingly present false testimony was unreasonable.  There were some inconsistencies between Waschull's testimony and documents cited by Thomas.  But that does not establish that Waschull's testimony was false.  Further, the defense theory that Waschull had a personal vendetta against Thomas was placed before the jury and Waschull and Thomas each testified such that the reliability of

their testimony was assessed "by testing in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 41 (2004). Thomas fails to show that the Michigan Court of Appeals' decision denying this claim was contrary to, or an unreasonable application of, *Darden*.

### c. Burden of Proof

Thomas argues that the prosecutor improperly shifted the burden of proof by making the following remark in closing argument:

> Now, defense counsel attempts to answer the question of how this stuff got on [defendant's computers]. It's a question that he has a burden to answer is how this stuff got onto computers in Mr. Thomas's home without him knowing, without, actually without him having done it.

*Thomas*, 2017 WL 1967475, at *4.

A prosecutor may not employ an argument that shifts the burden of proof to a defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or imply that the defendant is required to provide evidence to prove his or her innocence, *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006). The Michigan Court of Appeals held that the prosecutor's argument improperly shifted the burden of proof, but that the error did not require reversal. *Thomas*, 2017 WL 1967475 at *4.

The prosecutor's comment was brief and isolated and, as the Michigan Court of Appeals noted, the trial court correctly instructed the jury about the burden of proof and explained that attorneys' arguments are not evidence and told the jury that if an attorney said something contrary to the court's instructions the jury must follow the instructions.

*Id.* Jurors are presumed to follow the court's instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Moreover, defense counsel could have timely objected to cure any potential prejudice amongst the jury, by requesting the court to reiterate the appropriate burden of proof but failed to do so. Nevertheless, although the prosecutor's comment was clearly improper, considered in the context of the entire trial, the prosecutor's entire closing and rebuttal arguments, and the trial court's instructions, Thomas fails to show that the prosecutor's isolated remark rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### d. Suppression of Evidence

Thomas next argues that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to seize and preserve a router from his home, failing to preserve computers seized from his home, and failing to produce a google log until after trial.

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, *see Trombetta*, 467 U.S. at 489, versus cases where 'potentially useful' evidence is not accessible." *United States v. Wright*,

260 F.3d 568, 570-71 (6th Cir. 2001) (citing *Arizona v. Youngblood*, 488 U.S. 51 (1988)). A defendant's due process rights are violated where material exculpatory evidence is not preserved. *Trombetta*, 467 U.S. at 489. For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89. The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith. *See id.* at 488; *Youngblood*, 488 U.S. at 57.

However, "the Due Process Clause requires a different result when . . . deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 56. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003).

   i.   *The router*

Thomas states that the router was specifically listed as an item to be seized when police executed the search warrant at his home, but police

22

did not seize the router.  He argues the router could have been examined to determine whether any unknown devices accessed the Internet through this router.  Thomas maintains that the router would have supported Thomas's claim that he was framed.

The Michigan Court of Appeals applied the correct standard of review and held that Thomas failed to show that the evidence was favorable or that the police acted in bad faith.  The court reasoned:

> The record indicates that the police did not seize the router from Thomas's home when they executed a search warrant. Thomas argues that the router would have contained exculpatory information because it would have shown a history of all devices that accessed the Internet through his home network. However, Thomas overstates the evidentiary value of the router. The prosecution's expert explained that a router could be capable of storing its logging history, but only if that feature has been activated. According to the prosecution's expert, the feature typically is not turned on by default. In addition, the logging information must be viewed or examined at the scene. If a router is collected as evidence, it cannot be forensically examined later at another location to determine its logging history. Therefore, while Thomas accurately states that the police did not collect the router as evidence, there is no basis for concluding that it had exculpatory value or that the police destroyed any evidence on the router intentionally or in bad faith. In addition, the police did not suppress that evidence; they only failed to seize the router during the execution of the search warrant. Accordingly, Thomas cannot establish a *Brady* violation.
>
> Moreover, Thomas has not shown that the police acted in bad faith. The prosecution's expert described possibly being able to view the logging history at the search scene, but she was not part of the search team and that method would have only

been potentially useful if the router's logging history feature had been activated. Further, to the extent Thomas criticizes the police for not attempting to examine the router to find out if its logging history could be determined, that argument is directed at the failure by the police to develop the evidence. As previously indicated, neither the police nor the prosecution has a duty to assist a defendant in developing potentially exculpatory evidence. *Anstey*, 476 Mich. at 461.

*Thomas*, 2017 WL 1967475 at *6–7.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Thomas has not shown that the router would have been exculpatory, and the record is devoid of evidence that the police or prosecution authorities acted in bad faith—a necessary requirement to establish a constitutional violation where the destroyed evidence was only potentially useful to the defense. Given these circumstances, Thomas has failed to establish a constitutional violation. Habeas relief is not warranted.

To the extent that Thomas claims, in the alternative, that police seized the router but failed to turn it over to him or the lab for testing, (ECF No. 16, PageID.2039), this claim is meritless for the same reasons. He has not shown that the router would have contained exculpatory evidence nor has he shown bad faith by the prosecutor or police.

ii.   *Seized computers*

Thomas also claims that police seized seven computers, but police only turned over four of these computers to the crime lab for testing. This claim is meritless for the same reasons as the router-based claim – the

24

computers were only potentially useful to the defense and Thomas fails to show that authorities acted in bad faith.

### iii.    Certified Google log

Finally, Thomas claims that the state failed to produce a certified Google log obtained pursuant to a search warrant until after the trial. He argues that the log shows a different IP address than was the subject of the search warrant. The Michigan Court of Appeals held that Thomas fails to show that this log was exculpatory. *Thomas*, 2017 WL 1967475 at *8. As explained by the prosecutions' expert witness, the internet provider and Google assign different IP addresses to users. Thomas fails to show that the log was exculpatory or that its late production was the result of bad faith.

## D. Claim Four: Ineffective Assistance of Trial Counsel

In Thomas's last claim he asserts that his defense counsel was ineffective for: (1) failing to file any pretrial motions; (2) failing to present an expert witness; (3) eliciting inadmissible and prejudicial testimony; (4) failing to object to the prosecutor's misconduct or to present physical evidence of the misconduct; and (5) failing to point out the evidence was insufficient to support a conviction.[2]

---

[2] Respondent also addresses a claim Thomas raised on state court direct review that counsel was ineffective for failing to move to excuse two jurors for cause. Thomas did not raise this claim in his current petition. In any event, the claim is meritless. The Michigan Court of Appeals held that counsel was not ineffective for failing to move to excuse one juror

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient, and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A reasonable probability requires "that the likelihood be 'substantial,' not just 'conceivable.'" *Taylor v. Patel*, 2021 WL 3520819, *5 (6th Cir. Aug. 11, 2021) (quoting *Cullen*, 563 U.S. at 189). "Surmounting *Strickland*'s high bar is never an . . . easy task," but it is "all the more difficult" to accomplish under AEDPA. *Harrington*, 562 U.S. at 105 (quotation omitted). AEDPA and *Strickland* standards are

who initially expressed a misunderstanding about the burden of proof because the trial court clarified the burden, and the juror acknowledged and understood the correction. *Thomas*, 2017 WL 1967475 at *8. The state court also held that counsel was not ineffective for failing to move to excuse a juror who knew the officer-in-charge from high school because the juror did not socialize with the officer, had not seen the officer for three years, and affirmed that he would assess the officer's testimony in the same manner as any other witness's. *Id.* Based on this record, there was no basis for challenging these jurors. Thomas fails to show that the state court's decision was contrary to, or an unreasonable application of, *Strickland*.

26

both "highly deferential," and "when the two apply in tandem, review is 'doubly' so." *Id.*

### a. Pre-trial Motions

Thomas argues that his attorney performed deficiently by failing to file pretrial motions.  He claims that counsel should have responded to the prosecutor's notice of intent to present 404(b) evidence by filing a motion in limine to challenge the evidence.  Thomas cannot satisfy *Strickland*'s prejudice prong because the Michigan Court of Appeals held that the evidence was properly admitted under Michigan Rules of Evidence.  Counsel is not ineffective for failing to file meritless motions. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir.2000) (attorney not required to file meritless motions).  Counsel also was not ineffective for failing to file a motion to recuse the prosecutor based on the "missing" router.  Here too, the Michigan Court of Appeals held that the router was not suppressed by police or prosecutor and no bad faith was involved. Therefore, counsel did not perform deficiently by failing to move for the prosecutor's recusal.

### b. Expert Witness

Thomas next maintains that defense counsel was ineffective for failing to present an expert witness in computer forensics.

> The record shows that Thomas's lawyer retained an expert to investigate the evidence and that the expert reviewed the evidence and reported to Thomas's lawyer. Thereafter, Thomas's lawyer declined to call the expert witness at trial.

His decision not to call the expert was a matter of trial strategy. Because Thomas has not submitted any evidence showing the defense expert's findings, or otherwise explaining why his lawyer declined to call the witness at trial, he has failed to overcome the presumption that the decision not to call the witness was sound strategy.

*Thomas*, 2017 WL 1967475, at *7.

The rejection of this claim by the Michigan Court of Appeals is neither contrary to, nor an unreasonable application of, Supreme Court precedent or federal law. Petitioner is unable to overcome the strong presumption that counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Here, defense counsel retained an expert witness prior to trial. ECF No. 8. PageID.104-06. The expert conclusions did not support the defense theory that Thomas's computers had been hacked. The expert concluded that "there was no way forward with [a hacking] defense", and that a computer forensic expert "attempting to move forward in sworn testimony will suffer … a significant loss of reputation attempting to propose and defend it." (*Id.* at 106.) Given that the defense expert's findings undermined Thomas's defense, counsel was not ineffective for failing to present this testimony.

### c. Introduction of Prejudicial Testimony

Thomas argues that defense counsel elicited inadmissibly and highly prejudicial testimony from defense witness Waschull. Thomas

28

elicited testimony from Waschull that Thomas had a history of drunk-driving convictions and that he once almost ran over a sheriff's vehicle while trying to evade police. The Michigan Court of Appeals acknowledged that a defense attorney would not typically elicit this sort of testimony but held that doing so here was clearly in furtherance of the defense theory that Waschull "had become obsessed with Thomas and would go to great lengths to harm and embarrass him." *Thomas*, 2017 WL 1967475 at *8. The Court of Appeals concluded that Thomas failed to overcome the presumption that defense counsel's questioning was reasonable trial strategy. *Id.* The Court agrees that counsel's questioning, while unconventional, painted a portrait of Waschull as a man obsessed with Thomas and intent on bringing him down. This portrait supported the defense that Waschull was the source of the photographs on Thomas's computers. The jury ultimately rejected this defense, but it was not an unreasonable one. The state court's holding was not contrary to, or an unreasonable application of, *Strickland*.

### d. Objection to Prosecutorial Misconduct

Thomas's claim that counsel was ineffective in failing to object to the prosecutor's alleged misconduct does not entitle him to relief. As discussed above, with one exception, the prosecutor's conduct was not improper. Counsel, therefore, was not ineffective in failing to object. With respect to the prosecutor's improper burden-shifting, the state court found no ineffective assistance of counsel because Petitioner failed to

show any prejudice. *Thomas*, 2017 WL 1967475, at \*9. The Court finds this to be a reasonable application of *Strickland's* second prong. The prosecutor's statement was brief, tangential to the heart of the case, and the jury was instructed that the lawyers' arguments were not evidence. The Court finds no error warranting habeas relief.

### e. Physical Evidence

Thomas argues that counsel was ineffective for failing to present physical evidence of prosecutorial misconduct. The Michigan Court of Appeals, noting that the basis for the claim was unclear, concluded that Thomas's argument was based on counsel's failure to present evidence of Google logs. *Thomas*, 2017 WL 1967475 at \*8. The state court held that, because Thomas failed to show that the Google logs had any exculpatory value, counsel was not ineffective in failing to present them. *Id.* This holding is supported by the record and not contrary to, or an unreasonable application of, *Strickland*.

To the extent that Thomas also argues that counsel should have presented evidence that the prosecutor communicated with Waschull outside the courtroom, this claim is also meritless. As discussed above, counsel questioned Waschull about how and from whom he obtained information regarding Thomas's criminal case. Waschull's credibility and grudge against Thomas was adequately explored by counsel.

### f.  Burden of Proof

Finally, Thomas argues that defense counsel was ineffective for failing to point out to the jury that the State failed to satisfy its burden of proof.  In fact, during closing argument, defense counsel carefully reviewed the testimony and argued that the prosecutor failed to satisfy his burden.  Habeas relief is denied on this claim.

## IV.  Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

The Court finds that jurists of reason could not debate the conclusion that Petitioner has failed to demonstrate an entitlement to habeas relief.  A certificate of appealability is denied.

## V.  Conclusion

For the reasons set forth above, Petitioner's request for writ of habeas corpus and certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

Dated:  April 21, 2022   s/Terrence G. Berg
                         TERRENCE G. BERG
                         UNITED STATES DISTRICT JUDGE